IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERMA JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:23-cv-00875 ) |
| PENNYMAC LOAN SERVICES, LLC, et al., | ) JUDGE RICHARDSON ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

On August 21, 2023, Plaintiff Sherma Johnson, a Tennessee resident proceeding pro se, filed a Complaint (Doc. No. 1), an Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 2), and an Ex Parte Motion for Temporary Restraining Order (TRO) (Doc. No. 3, "TRO Motion") supported by a Memorandum of Law (Doc. No. 4).

Plaintiff sues PennyMac Loan Services, LLC ("PennyMac") and the Secretary of Veterans Affairs concerning disputes over her mortgage loan repayment obligations after her period of loan forbearance ended. These disputes resulted in PennyMac's denial of her request for loan modification, declaration of her default, and notice that her residence (located at 2937 Brewster Drive, Clarksville, Tennessee, 37042) would be sold on August 22, 2023, to satisfy her indebtedness and the costs of foreclosure. Via her TRO Motion, Plaintiff seeks to avert the imminent foreclosure and sale of her home.

**I. APPLICATION TO PROCEED AS A PAUPER**

The Court may authorize a person to file a civil suit without paying the $402 filing fee. 28 U.S.C. § 1915(a). To grant such authorization, the Court requires sufficient information to

determine "whether the court costs can be paid without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Here, Plaintiff utilized the abbreviated "short form" application to proceed as a pauper (Form AO240) instead of the "long form" application (Form AO239). However, in the Middle District of Tennessee, "only prisoner litigants are permitted to use the short form. Non-prisoner litigants must use the long form AO239" that provides more detailed financial information. *See* https://www.tnmd.uscourts.gov/pro-se-forms (last visited August 22, 2023). The Court understands, however, that Plaintiff may have been unaware of this limitation because it is not printed on, or otherwise made clear by, the short form that she used. Accordingly, the Court will allow Plaintiff an opportunity to submit an amended application.

Plaintiff's short form application to proceed as a pauper (Doc. No. 2) is therefore **DENIED WITHOUT PREJUDICE** to the filing of an amended long form application. To proceed in this matter, Plaintiff **MUST** either (1) pay the full $402 civil filing fee to the Clerk of Court,[1] or (2) submit a long form application to proceed as a pauper. The Clerk **SHALL** mail Plaintiff a blank long form Application to Proceed in District Court Without Prepaying Fees or Costs (Form AO239). Plaintiff's submission must be received by the Court within **30 DAYS** of the date this Order is entered on the docket. Failure to comply by the deadline or request an extension of time may result in dismissal of the Complaint for want of prosecution and failure to follow an order of the Court. Fed. R. Civ. P. 41(b).

---

[1] There is a civil filing fee of $350 plus "such additional fees . . . as are prescribed by the Judicial Conference of the United States." 28 U.S.C. § 1914(a) and (b). The Judicial Conference has set a $52 administrative fee for filing any civil case, except for habeas cases or cases in which the plaintiff is granted leave to proceed as a pauper under 28 U.S.C. § 1915. Accordingly, a plaintiff not granted pauper status is responsible for the full $402 fee.

## II. REQUEST FOR A TEMPORARY RESTRAINING ORDER

The Court begins by noting an obvious defect in the presentation of Plaintiff's TRO Motion. That Motion, by which Plaintiff seeks to halt the noticed sale of her home "on August 22, 2023 at 12pm at the Montgomery County Courthouse in Clarksville, TN" (Doc. No. 4 at 2), was filed in this Court on the afternoon of August 21, 2023. By her own admission, Plaintiff received written notice of the day, time, and location of the foreclosure sale "on or about July 18, 2023" (*id.* at 1–2) but waited until one day prior to the sale to file her TRO Motion.[2] Such last-minute emergency motions, filed less than 24 hours prior to the event the movant seeks to avert and lacking "a convincing explanation for the timing of the request[,] are strongly disfavored." *Jacquelyn S Jordan Tr. v. City of Franklin*, No. 3:22-CV-00326, 2022 WL 1507196, at *1 (M.D. Tenn. May 12, 2022) (citing *Lucking v. Schram*, 117 F.2d 160, 162 (6th Cir. 1941) ("[E]quity aids the vigilant, and not those who slumber on their rights.")); *see also Kassab v. City of Detroit*, No. 22-CV-12307, 2022 WL 5052640, at *2 (E.D. Mich. Sept. 29, 2022) (denying TRO to movants who sought to enjoin enforcement of deadline two days prior to that deadline, because movants "created the purported emergency here by waiting until the eleventh hour to file this action" without offering "any persuasive explanation in their motion as to why they waited so long before rushing into federal court and claiming an urgent need for immediate relief").

In addition to the timing issue, Plaintiff's TRO Motion suffers from other defects that require its denial.[3] Those seeking a TRO or preliminary injunction under Federal Rule of Civil

---

[2] Although all of Plaintiff's filings were received by the Clerk's Office on August 21, the Court notes that the Complaint bears a typewritten date of July 26, 2023. (Doc. No. 1 at 16.)

[3] The Court notes that the TRO Motion does not appear to suffer from any of the procedural defects that often frustrate pro se litigants' efforts to win emergency injunctive relief under Rule 65(b) of the Federal Rules of Civil Procedure and Rule 65.01 of this Court's Local Rules.

3

Procedure 65 must meet four requirements.[4] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; that the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022). While a TRO motion cannot be granted without a showing that the movant faces irreparable harm, *see D.T. v. Sumner Cnty. Sch.*, 942 F.3d at 327 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)), "the likelihood of success on the merits often will be the determinative factor" in adjudicating such a motion. *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) (quoting *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014)).

Importantly, "[t]he merits on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Church v. Biden*, 573 F. Supp. 3d 118, 133 (D.D.C. 2021) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019)). The Complaint in this case invokes this Court's jurisdiction under both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship). (Doc. No. 1 at 2.) However, the Court finds that only federal question jurisdiction has properly been invoked at this point.

Diversity jurisdiction exists only when "no plaintiff and no defendant are citizens of the same state." *Curry v. United States Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citation omitted). The burden is on the party asserting diversity jurisdiction to "fully allege the citizenship of each party," and district courts "must hold litigants to this requirement." *Akno 1010 Mkt. St. St.*

---

[4] Some published Sixth Circuit cases stand unmistakably for the proposition that these four items are factors rather than requirements, except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law describing these as all being requirements. The Court believes that it is constrained to follow the latter line of cases.

4

Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010)). Here, the Complaint does not establish complete diversity of citizenship. Although PennyMac Loan Services, LLC is alleged to be "a Delaware corporation with its princip[al] place of business in Westlake Village, California" (Doc. No. 1 at 1), the Complaint's attachments confirm that it is an LLC, not a corporation. (*See* Doc. No. 1-1 at 2–3, 22, 24–26.) The state under whose laws an LLC is organized, or where it maintains its principal place of business, is not the state where the LLC has citizenship. Rather, as unincorporated entities, "LLCs have the citizenships of their members and sub-members." *Akno*, 43 F.4th at 627. "Thus, when an LLC is a party in a diversity action, the court must know the citizenship of each member and sub-member." *Id.*; *see also Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Without knowing this information, the Court cannot be assured that diversity jurisdiction is properly asserted. *See Aquasea Grp., LLC v. Singletary*, No. 4:13-cv-2286, 2013 WL 5781192, at *1 (N.D. Ohio Oct. 25, 2013) ("If even one member or sub-member of an LLC is non-diverse, 'then complete diversity, and with it federal jurisdiction, would be destroyed.'") (quoting *Delay*, 585 F.3d at 1005)). The Court therefore declines to consider the likelihood of Plaintiff's success on the merits of her state-law claims—those claims that require diversity of citizenship in order to fall within the Court's jurisdiction as pled[5]—in adjudicating the TRO Motion.

Turning to the other jurisdictional ground invoked in the Complaint, the Court considers Plaintiff's assertion of federal question jurisdiction under § 1331 based on "one of the counts" in her Complaint: "Count Two," for "RESPA Violations" under 12 U.S.C. § 2605(e). (Doc. No. 1 at 2, 5–6.) The Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, is a federal

---

[5] The Complaint does not invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367, and the Court declines to consider whether Plaintiff is likely to succeed on any state-law claim that may eventually be determined to be properly before the Court as a matter of supplemental jurisdiction.

consumer protection statute that, in pertinent part, requires servicers to respond promptly and in writing to any "qualified written request" from the borrower "for information relating to the servicing of such loan"; to "make appropriate corrections" to the account of the borrower, or provide a written explanation for not doing so after conducting an investigation and informing the borrower of an internal source "who can provide assistance to the borrower"; and to protect the borrower's credit rating by waiting at least 60 days from any qualified written request "relating to a dispute regarding the borrower's payments" to report any overdue payment "to any consumer reporting agency." *Id.* § 2605(e)(1)–(3). Plaintiff's RESPA claim is based on PennyMac's alleged violations of these statutory provisions. (*See* Doc. No. 1 at 5–6.)

Although RESPA does create a private cause of action for borrowers who claim that its provisions were violated, *see* 12 U.S.C. § 2605(f), and the Court is thus satisfied that it has jurisdiction over this case and Plaintiff's TRO Motion, RESPA violations do not "affect the validity or enforceability of any . . . loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." *Id.* § 2615. And "[b]ecause RESPA violations do not affect the validity or enforceability of a mortgage loan, a RESPA disclosure violation is not a defense to foreclosure." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *15 (S.D.N.Y. Mar. 9, 2020). And Plaintiff's assertion of a "dual tracking" violation[6]—defined under RESPA regulations that "prohibit a servicer from commencing a foreclosure proceeding or conducting a foreclosure sale if the borrower has submitted a 'complete loss mitigation application' within specified timeframes," *id.* at *14 (quoting 12 C.F.R. §§ 1024.41(f)–(g))—is not grounds for preventing foreclosure, but rather is only grounds for a damages claim, one that "is not ripe . . . as long as foreclosure proceedings are

---

[6] *See* Doc. No. 1 at 3 ("It is clear . . . that Defendants participated in dual tracking of the underlying note."); *see also* Doc. No. 4 at 1 (same).

still pending and the plaintiff has not yet lost her property." *Id.* at *15 (citing, *e.g.*, *Wilmington Tr., Nat'l Ass'n as Tr. of ARLP Sec. Tr., Series 2014-2 v. Garcia*, No. 15-CV-00378, 2018 WL 7253970, at *8 (S.D. Tex. Dec. 19, 2018) ("[I]f Plaintiff impermissibly engaged in dual tracking . . . this will give rise to a private cause of action for damages, but it is not a basis to stop foreclosure[;] . . . Defendants may file suit once the servicer has foreclosed on their property, or they are able to demonstrate other damages.")). Plaintiff thus cannot demonstrate a likelihood of success on the merits of any claim that the Court can be certain is *both* properly before it at this juncture *and* related to the foreclosure sale of the property at issue. Because she "may not seek relief in this [motion] that is unrelated to the claims that are before the Court," *Montgomery v. Wellpath Med.*, No. 3:19-CV-00675, 2022 WL 1598253, at *2 (M.D. Tenn. May 19, 2022), she cannot succeed in forestalling the sale set to occur mere hours from the entry of this Order.

For all of these reasons, Plaintiff's Ex Parte Motion for Temporary Restraining Order (Doc. No. 3) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE